GEORGIA INFIRMARY FOR THE RELIEF AND PROTECTION OF AGED AND AFFLICTED NEGROES *v.* JONES *et al.*

CITY COUNCIL OF AUGUSTA *v.* SAME.

(*Circuit Court, S. D. New York.* February 22, 1889.)

WILLS—CONSTRUCTION—SPECIFIC LEGACY—ADEMPTION.

Testator, after expressly disposing of all the residue of his estate except certain cotton claims against the United States government, bequeathed a specified sum out of the proceeds of said claims to complainants, or so much as should remain after paying certain legacies to others. At that time his claims were pending before the court of claims, but before his death he collected them, and invested the proceeds in securities, realizing a sum sufficient to have satisfied the bequest to complainants. *Held,* that the legacies were specific, and were payable only in case the executors collected the funds from the source indicated, and that testator by collecting them caused an ademption of the legacies.

In Equity. Bills for legacies.

Bills respectively by the Georgia Infirmary for the Relief and Protection of Aged and Afflicted Negroes and the city council of Augusta, against Jones and another, administrators *c. t. a.* of Gazaway B. Lamar, for the payment of certain legacies given to complainant.

*John W. Weed,* for complainants.

*Charles C. Beaman,* for defendants.

WALLACE, J. These actions involve the rights of the complainants, respectively, to legacies of $50,000, bequeathed to them for charitable objects by the will of Gazaway B. Lamar, deceased. The will was executed September 28, 1872, and at that time the testator owned real and personal property in possession, and had besides certain claims for a large amount against the government of the United States for cotton which had been seized and sold by its officers during the war of the Rebellion, which claims were then being prosecuted for collection. The will, by the first

clause, directs that all the debts of the testator be paid by the executors. By the second clause the executors are directed to divide into four equal parts "all the rest of my property of which I may die seised or possessed, (or which I may hereafter acquire,) excepting only my cotton claims upon the government of the United States." The will then provides, by clauses 3, 4, 5, and 6, for the distribution of the four parts by the executors of the property of the second clause, one to each of the four children of the testator, according to specified trusts and conditions. The seventh clause directs the executors "to press my claims upon the government of the United States for payment for cotton, which are now before the court of claims, or before the committee on claims of the congress of the United States," and enumerates the particulars of the several claims. By clauses 8 and 9 the will makes provision for the payment to certain persons of specified sums to which they are legally or equitably entitled from the proceeds of the cotton claims. The tenth clause directs the executors to divide the "amount collected" from the said cotton claims into four equal parts, if it be less than $200,000, and distribute it to the four children of the testator pursuant to the provisions of clauses 3, 4, 5, and 6. The eleventh clause bequeaths to the present complainants, "next out of the residue of my cotton claims when collected, $100,000, if so much may remain, and, if not, whatever balance may remain, to be divided equally," for the charitable objects particularly specified. Clauses 12, 13, and 14 bequeath certain other legacies out of the residue of the proceeds of the cotton claims. The fifteenth clause devises and bequeaths all the rest and residue of the testator's property, "real, personal, and mixed," to the four children of the testator. The testator died in October, 1874. The will was probated in New York city, the testator's place of domicile. After making the will, the testator collected from the government of the United States $342,819 on account of his cotton claims, and invested the proceeds in various securities. The cotton claims not collected during his life-time are of inconsiderable value, and the executors have been unsuccessful in their efforts to collect them.

Applying the familiar rule that a will speaks as of the time of the death of the testator, and not as of the time of its date, the second clause of the present instrument could be interpreted to mean that all the property which might belong to the testator at the time of his death, excepting only such cotton claims as he should then have, is to be divided by the executors into four parts, to be distributed for the benefit of his children. Consequently, in the absence of any other language or provision in the will to limit or control the meaning of the clause, according to this canon of interpretation, the provision would require the executors to include in the property to be distributed to the testator's children all the property and assets belonging to him at the time of his death, excepting such only as might exist in the form of outstanding and uncollected demands against the government of the United States. This view would be fatal to the claims of the complainants; but it does not seem to be the reasonable one. It seems very plain that when by that clause the testator directed his executors to divide for the benefit of his children all the prop-

erty of which he might die possessed, excepting only his cotton claims against the government of the United States, he intended to exclude from the property thus to be divided the outstanding demands, which he particularly enumerated in clause 7 of the will. When he used the words, "my cotton claims," he referred to the uncollected debts, from which he thought enough might be realized to create a further fund of $200,000 for his children, and $100,000 for the complainants. These particular claims which he enumerated and described, and which he directed his executors to press and collect, were the property which he had in mind, and which he intended to except from the operation of the second clause. In this sense, the will speaks as of the time of its execution, and the seventh clause is to be read as a gift of the cotton claims belonging to the testator at that date for the benefit of the children and the complainants together. According to this interpretation, however, the legacies to the complainants are specific legacies, and the case falls within the rule that, where the subject of the bequest has ceased to exist before the testator's death, the legacy is adeemed. A specific legacy is one which is to be paid only out of a particular source or fund designated by the will. The extinction of the subject of a specific legacy, or such a change in its state as makes it another thing, annuls the bequest, for reasons paramount to considerations of intention. An example of the class, and an illustration of the rule, is found in the recent case of *Davis* v. *Crandall*, 101 N. Y. 311, 4 N. E. Rep. 721. The will in that case bequeathed to the legatee "the sum of $243.92, a portion of the debt due me from James Davis, secured by his note." The court held that this was a specific legacy, and said: "If that note had been paid during the life-time of the testatrix, or otherwise canceled or destroyed, so that no obligation at her death rested upon James Davis to pay it, the legatee would have taken nothing." This authority is in harmony with many decisions to the effect that if the bequest be of the sum owing upon a security or obligation, or of a sum to be paid out of a designated and distinct part of the testator's property, the legacy is specific. *Sidebotham* v. *Watson*, 11 Hare, 170; *Chaworth* v. *Beech*. 4 Ves 555, *Ford* v. *Fleming*, 1 Eq. Cas. Abr. 302; *Fryer* v. *Morris*, 9 Ves. 360; *Towle* v. *Swasey*, 106 Mass. 100. In *Gilbreath* v. *Winter*, 10 Ohio, 64, the bequest was: "All the amount of moneys and interest that may be recovered of and from K. for the sums due me on the purchase of the [described] estate, to her and to her assigns." The bequest was held to be a specific one, and the receipt of the money by the testator to be an ademption of it. Because of the hardship of the doctrine that a specific legacy is lost if the subject of it is disposed of by the testator, or is extinguished in his life-time, notwithstanding the will may denote unmistakably that the testator intended to treat the legatee as an object of his bounty, the courts incline to consider legacies as demonstrative, rather than specific, where the language of the will is reasonably capable of that construction. Accordingly, if the bequest, instead of being for a specified sum "due upon" a security or obligation, is for the sum "out of the proceeds," or "contained in" a security or obligation, it will be treated as a demonstrative legacy, to which the rule

of ademption does not apply. And whenever it can be inferred from the language of the will that the testator's intention was to give the legatee a specified sum, not necessarily out of a particular fund, although incidentally and primarily so, but irrespective of it, the gift will be construed as a demonstrative, instead of a specific, legacy. *Le Grice* v. *Finch*, 3 Mer. 50; *Giddings* v. *Seward*, 16 N. Y. 365; *Newton* v. *Stanley*, 28 N. Y. 61; *Clark* v. *Browne*, 2 Smale & G. 524. A case in which the distinction between a specific and a general legacy in the same will is taken upon these principles, is *Gillaume* v. *Adderley*, 15 Ves. 384. In determining whether the legacy is specific or demonstrative the question always is whether it is a gift out of a specified fund or security, or a gift of a specified sum, with a specified fund as security. If it falls within the former class, the legacy fails when the fund or security ceases to exist in the testator's life-time. The law is well stated in *Walls* v. *Stewart*, 16 Pa. St. 281:

"The distinction seems to be this: If a legacy be given with reference to a particular fund only, as pointing out a convenient mode of payment, it is considered demonstrative, and the legatee will not be disappointed, though the fund totally fails. But when the gift is of a fund itself, in whole or in part, or is so charged upon the object made subject to it as to show an intent to burden that object alone with its payment, it is specific."

Upon the authorities, it is entirely clear that the legacies to the complainants do not fall within the class of demonstrative legacies. They are legacies of $50,000, payable exclusively out of the amount to be collected from the cotton claims by the executors; they are a gift out of a specified fund, and not otherwise. The will, in effect, gives the cotton claims to the executors, in trust to collect them, appropriate the proceeds to a distinct fund, and apply $200,000 of the fund pursuant to the directions of clauses 3, 4, 5, and 6, and the residue, if any, to the complainants and other legatees. The bequest cannot take effect except as to the claims which were not collected before the testator's death, because there was such a change in the subject-matter as to annul the gift to the executors in trust. As to the collected claims, there was nothing in existence in respect to which the trusts imposed by the will upon the executors could attach. The case is directly met by the observations of Lord THURLOW in *Humphreys* v. *Humphreys*, 2 Cox, 185, that—

"The only rule to be adhered to is to see whether the subject of the specific bequest remained *in specie* at the time of the testator's death; for, if it did not, then there must be an end to the bequest; and the idea of discussing what were the particular motives and intention of the testator in each case in destroying the subject of the bequest would be productive of endless uncertainty and confusion."

So far as the authorities which are cited for the complainants declare that bequests by which the collections or proceeds, or the amount to be received from a particular claim or fund, are given to legatees, are not defeated when the proceeds are received by the testator in his life-time, and have been kept by him so as to be distinguishable from the rest of his estate, they are acceded to as undoubtedly correct. They proceed

upon the distinction between the gift of a debt *qua* debt, and the gift of a sum of money to arise when the debt shall have been recovered and ceased to exist as a debt. In a gift of the latter class it may be inferred that the testator contemplated the recovery of the debt in his own life-time, and intended to give, not the debt itself, but the amount to be received in respect of it. When the bequests are of this character, the fund received by the testator in his life-time may be followed through its transmutations, and reached, if capable of identification. The case of *Doughty* v. *Stillwell*, 1 Bradf. (Sur.) 300, is a departure from the doctrine of these authorities, and, so far as it sanctions the proposition that the ademption of a specific legacy caused by the act of the testator in extinguishing the subject may be nullified by extrinsic evidence of his motive or intentions, it is not approved. The bequests here are for the sums given to the complainants, respectively, in case the executors should realize the amount by collecting the cotton claims, and not otherwise. The testator, by collecting the claims himself, put it out of the power of the executors to comply with the provisions of the will, and to that extent his acts were equivalent to a revocation of the bequests. The bill is dismissed.