## Eugenia Meily et al., Appellants, v. Robert S. Knox, Executor, et al., Appellees.

### Gen. No. 19,643.

1. APPEAL AND ERROR, § 1488*—*when receipt of incompetent evidence by chancellor not reversible error.* Incompetent or irrelevant evidence received by a chancellor is not supposed to have been considered or regarded by him unless it appears affirmatively that his ultimate decision was affected by it.

2. WILLS, § 226*—*when intention of testator as to demonstrative or specific character of legacy controls.* The character of a legacy as demonstrative or specific is controlled by the intention of the testator as expressed in the will.

3. WILLS, § 454*—*whether legacy demonstrative or specific.* A testator's will left to certain persons "my property located in Lima,

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Allen County, Ohio," describing it, "to be by them sold" and out of the proceeds thereof to pay the following bequests so far as the proceeds will go in the order indicated." The following day she executed a codicil changing the trustee and authorized the trustee thus named to sell and dispose of the personalty and realty and directed her to distribute the proceeds realized from the sale of any or all of said property equally between the testator's sisters and brothers named in her will, "the proceeds realized from the sale of the Lima, Ohio, property, however to be subject to the specific bequests provided in and by my said last will and testament." It was *held* that the legacies payable out of the proceeds of the Lima property were specific, and not demonstrative.

4. Wills, § 455*—*when specific legacy adeemed.* Where a testator who gave a specific legacy payable out of the proceeds of certain realty which she directed her executor to sell, sold the realty herself, the legacy is adeemed.

5. Wills, § 214*—*when allowance of counsel fees to contestants properly denied.* In the circumstances of the particular case, *held* that the allowance of counsel fees to persons contesting executor's construction of will properly denied.

Appeal from the Superior Court of Cook county; the Hon. M. L. McKinley, Judge, presiding. Heard in this court at the October term, 1913. Affirmed. Opinion filed January 25, 1915. *Certiorari* allowed by Supreme Court.

**Statement by the Court.** March 2, 1909, Sarah J. Tucker of Chicago, the second wife and widow of one Norman Tucker, executed a will. Her husband before his death had changed his residence to Chicago from Lima, Ohio, where he had been a prominent citizen and closely connected with the Protestant Episcopal Church there. Sarah J. Tucker owned some real estate in Lima. There were at the time the will was made two children of Norman Tucker—stepchildren of Sarah J. Tucker—living in Lima, by name, Chester P. Tucker and Eugenia Meily. Eugenia Meily was the wife of George H. Meily.

Mrs. Tucker, after providing in the first paragraph of her will that her debts should be paid, devised by the second one certain real estate situated in Chicago

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

to six sisters and a brother share and share alike. The third section of the will was as follows:

"I give and devise unto my sisters, Mary Wood, Nellie Mildren, Bessie Knox, Annie Detwiler, Lottie Poland and Emily Villa and unto my brother, William J. Cooke, share and share alike, my property located in Lima, Allen County, Ohio, and more particularly described as follows:" (Here follows description) "to be sold by them and out of the proceeds thereof to pay the following bequests so far as the proceeds will go in the order indicated.

(a) To my stepson Chester Tucker of Lima, Ohio, two thousand ($2,000) dollars. (b) To my stepdaughter Mrs. George H. Meily (nee Eugenia Tucker) of Lima, Ohio, one thousand ($1,000) dollars. (c) Two thousand ($2,000) dollars for the erection of a monument on my lot in Oakwood Cemetery. (d) Fifteen Hundred ($1,500) Dollars to be expended to place a memorial window in the Episcopal Church founded by my beloved husband in said Lima, Ohio. (e) One Thousand ($1,000) dollars to be invested by the Trustees of The Oakwood Cemetery of Chicago, Illinois, for the purpose of defraying the expenses of keeping my lot in said Oakwood Cemetery in good order and condition."

The fourth clause of the will contains money bequests to a sister and a nephew. The fifth clause distributes various personal effects among ten different people, among them her sisters and her stepdaughter, Mrs. Meily. The sixth clause makes a residuary devise and bequest of all the remainder of her property, real, personal and mixed, to her brother and sisters, share and share alike. The seventh names her nephew, Robert S. Knox, executor of the will without bond. The will was duly witnessed on its date. On the next day, March 3, 1909, before the same attesting witnesses, Mrs. Tucker executed a codicil to her will of March 2, 1909, after the formal preface, running as follows:

"I give, devise and bequeath all the of the real estate of which I may die seized and all of the shares of the

capital stock in Chicago Railways Company, American Smelting and Refining Company, the United States Steel Corporation owned by me at my death, unto my beloved sister Lottie Poland as Trustee, with full power to said trustee to sell and dispose of the same or any part thereof or any interest therein—such manner as may be deemed wise or expedient by her, and in that behalf convey a good and perfect title to all of said property or any part thereof or any interest therein by trustee's deed without liability on the part of any of the purchasers from said trustee to look to the proper application of the purchase price paid therefor.

And I do hereby direct my said trustee to distribute the proceeds realized from the sale of any or all of said property equally between my sisters and brothers named in my said last Will and Testament, the proceeds realized from the sale of the Lima, Ohio, property however to be subject to the specific bequests provided in and by my said last Will and Testament in paragraph 3 thereof.

I hereby direct that my executor named in my last Will and Testament shall receive as compensation for his services as such Executor the sum of Fve Hundred Dollars.

I do hereby reaffirm and republish my said last Will and Testament of March 2nd, 1909, except only as modified and controlled by this my first codicil to said last Will and Testament.

In witness whereof, I have hereunto subscribed my name and affixed my seal this third day of March, A. D. 1909.''

December 7, 1909, Sarah J. Tucker sold and conveyed by warranty deed to one James O. Ehler her property in Lima described in her will, receiving therefor $7,500 in cash. January 16, 1910, she died and the will and codicil before recited were admitted to probate in the Probate Court of Cook county March 26th in that year. Letters testamentary were issued to Robert S. Knox as executor. The inventory filed in the Probate Court showed that her estate then consisted of thirty shares of United States Steel Corporation stock, ten shares of American Smelting and Re-

fining Company stock, eight shares Chicago Railways
Company stock, $7,386.10 in cash, $1,524.25 worth of
personal effects, and certain real estate in Cook county,
Illinois.

October 31, 1911, the appellants herein Eugenia
Meily and The Parish of Christ Protestant Episcopal
Church of Lima, Ohio, filed a bill in equity in the Su-
perior Court of Cook county, of which, after amend-
ment, the two paragraphs setting forth their alleged
grievances and contentions are:

"5.   Your orators further show that by the terms
of said will and the codicil thereto it was the intention
of said testatrix as expressed therein that your orators
should have and be paid out of the assets of her estate
upon her decease the several amounts of money as
legacies specified in said third clause; and the said
Chester P. Tucker and the Cemetery Association also
named in the third clause were bequeathed and were to
be paid out of the assets of her estate the several
amounts specified therein, and said bequests and each
of them were also made a charge upon the Lima prop-
erty, and upon the sale and transfer of said real estate
of the testatrix prior to her decease, said legacies and
each of them became general charges upon the re-
mainder of the real and personal estate left by her
at her decease; and your orators and the other persons
whose legacies were charged upon the Lima property
are entitled to be paid their said legacies out of the
general estate of the testatrix.

6.   Your orators further show that they have re-
quested Robert S. Knox, the executor of Sarah J.
Tucker, deceased, to recognize and pay their legacies,
but said executor refuses to do so and claims that
under said will and codicil as construed by him and
the law, your orators are not entitled to the said lega-
cies provided for in the third clause and in the codicil
of the will or to any part thereof, and he has refused
to recognize complainants as legatees or devisees
under said clause of the will or the codicil, or to make
payment of the said legacies to your orators out of the
estate of the deceased, and said executor threatens to

distribute all of the assets of said estate to the other legatees and to ignore the said legacies and to refuse to pay to your orators or to the said Chester P. Tucker or to the Cemetery Association the several legacies bequeathed to them by said third clause and the codicil to said will.''

To this bill Robert S. Knox, executor, Lottie Poland as trustee, the six sisters and the brother of Mrs. Tucker (who were her only heirs at law and next of kin), Chester P. Tucker, The Oakwoods Cemetery Association, Albert Smith, Marguerite Poland and Elizabeth Long (the last three being among the beneficiaries of the legacies of personal effects), were made defendants.

All the defendants but Robert S. Knox, executor, Bessie D. Knox and The Oakwoods Cemetery Association were defaulted. The Oakwoods Cemetery Association answered the bill, admitting its allegations and alleging that upon a proper construction of the will and codicil in question it was entitled to the legacy of $1,000 in the third paragraph of the will mentioned.

Robert S. Knox and Bessie D. Knox answered, denying the rights of the complainants and of Chester P. Tucker and The Oakwoods Cemetery Association to have the legacies named in the will paid out of the general assets of the estate, and alleging on the contrary that it was the intention of the testatrix, as shown by her act in selling the Lima property before her death and by other circumstances, that ''the amounts therein charged upon the real estate aforesaid should lapse and that the said amounts should not be paid to the various persons and corporations named in said third clause of the will.''

Replications were filed to these answers and the cause came to a hearing. The final decree found:

''That the equities in this cause are with the defendants, excepting the defendants The Oakwoods Cemetery Association and Chester P. Tucker, and that the complainants herein are not entitled to all or any of

the relief in said bill of complaint prayed, and that the defendant The Oakwoods Cemetery Association is not entitled to any of the relief to which said defendant in its answer claims to be entitled, and that neither the complainants nor the defendants The Oakwoods Cemetery Association and Chester P. Tucker are entitled to receive any legacies or payments on account of anything contained in the third clause of the will of Sarah J. Tucker, deceased,''
and ordered that the amended bill be dismissed for want of equity at the cost of complainants. From this decree the complainants appealed to this court.

SIMMONS & IRVING, for appellants.

FOREMAN, LEVIN & ROBERTSON, for appellees.

MR. PRESIDING JUSTICE BROWN delivered the opinion of the court.

The question before us is simply whether the legacies in question were demonstrative legacies or specific legacies. The assignment of error concerning the admission of incompetent evidence may be treated as practically negligible. A chancellor who receives incompetent or irrelevant evidence is not supposed to have regarded or considered it, unless it appears affirmatively in some way that his ultimate decision was affected by it. There is no reason to suppose that the admission of the letter of December 9, 1909, from Mrs. Tucker to Mrs. Meily, whether or not it were competent, did affect the decision of the court in this cause. Indeed, the inference is very strong from the refusal of the chancellor to admit the testimony of Robert S. Knox and Bessie D. Knox, which counsel said would show that Mrs. Tucker after making the will and codicil in question herself placed a construction on them on the very question herein involved, by saying that she was very happy that the sale of the Lima property had been made ''and very glad that it

would cut out the Meily heirs, who never had done anything for her," showed that he did not deem anything which Mrs. Tucker said after the execution of the documents involved competent even to throw light on her intention when phrasing the will as she did. This ruling may have been correct as bearing a relation at least to the general doctrines that as to the intention of the testator the will must be construed as of the date of execution, and that the intention expressed by written instruments generally is to be gathered from the language used in them and not from extrinsic sources.

Nevertheless, in this case, where the gist of the whole contest is really what, in the use of certain language, was the intention of the testator as to limiting the operation of a bequest, a plausible argument could be made to the contrary. The question is not before us, for the court excluded the offered testimony and, as we have said, may fairly be supposed to have ignored the "Dear Jennie" letter (as the letter of December 9, 1909, is called in the argument) as throwing any light upon the meaning of Mrs. Tucker's will.

Much is said by counsel for the appellant about the impossibility of a "revocation" of the will by anything that could be said or done by Mrs. Tucker except the destruction or cancellation of the old will or the making of a new one. It seems beside the point, for no revocation is claimed or suggested. The real question, as we have said, is simply whether the bequests to Chester P. Tucker, to Mrs. Meily, to Oakwoods Cemetery and to Christ Church were demonstrative or specific legacies. That question, in our opinion, is simply the technical method of stating this inquiry: Do the words employed by Mrs. Tucker in her will and codicil (the codicil indeed being, as her latest expression, controlling and governing) show an intention that these legacies shall be paid only if at her death the Lima property should remain a part of her estate

and pass from her to Lottie Poland as trustee; or do they express an intention that they should be paid at all events if her estate contained assets sufficient, but that the proceeds of the Lima property, if the trustee received and disposed of it, should be primarily the fund to be resorted to for their payment?

In the former case they were specific legacies; in the latter demonstrative. If "specific" they were bequests of a specified part of the testator's estate if it existed at the time of the taking effect of the will at the testator's death. If it did not exist, because the testator had parted with that part of her estate between the time of making her will and the time of her death, the legacies were "adeemed," which only means that they were "taken away" by the extinction as a part of the estate of the fund out of which they were to be paid. Mrs. Tucker by her will, for example, bequeathed one blue and gold enamel plaque and nothing else to Elizabeth Long. If Mrs. Tucker had sold the plaque while living, Elizabeth Long would have received nothing by the will, this being an illustration of a specific legacy concerning which there could be no dispute. If, however, the bequests here in discussion were "demonstrative"—that is, if the language by which they were given showed an intention that whether or not the Lima property remained a portion of the estate at the time of her death, the legacies should be paid; but that if the Lima property was a portion of the estate it should be sold and the proceeds form primarily but not exclusively the fund from which they should be paid—then they were not "adeemed" by the sale of the property by Mrs. Tucker before her death.

The counsel for appellant with great diligence have made a catena of authorities, many of them containing very interesting discussions of the distinctions between general, specific and demonstrative legacies, and more particularly, as the bequests involved generally

raised only that point, the difference between "specific" and. "demonstrative" legacies. The counsel for appellee has discussed some of these cases and cited others, and we have not by any lack of investigation of them rendered this court obnoxious to the criticism which Lord Eldon made on passing a question like that involved herein, "without observation" or "with little observation." *Sibley v. Perry,* 7 Vesey Jr. 522. It would be useless, however, for us to load this opinion with an elaborate discussion of the authorities or their varying degrees of weight.

One controlling principle practically runs through them all. It is that while courts may lean to construing legacies as demonstrative rather than specific, that they may not fail, this leaning and all other presumptions will give way if the intent of the testator to the contrary is fairly exhibited by the words of the will.

This is but the corollary of the famous and sound utterance of Mr. Justice Wilmot in the King's Bench, supporting the opinion of Lord Mansfield in *Doe v. Laming,* 2 Burrow, 1100, that "the intention of the testator is the pole star for the direction of devises," and that all cases which depend upon it "are best determined upon comparing all the parts of the devise itself without looking into a multitude of other cases, for each stands pretty much upon its own circumstances."

Many of the cases cited by counsel in this cause very definitely express this controlling principle. We note some as examples.

Lord Cottenham in *Creed v. Creed,* 11 Clark & Finnelly 491, said in giving his opinion in the House of Lords:

"There are many cases in which though a legacy be charged upon a particular fund, it does not fail by failure of the fund, which are called demonstrative legacies, but these all proceed upon the construction showing a general intent."

And in *George Infirmary v. Jones,* 37 Fed. 750, Judge Wallace of the U. S. Circuit Court said:

"Whenever it can be inferred from the language of the will that the testator's intention was to give the legatee a specified sum, not necessarily out of a particular fund, although incidentally and primarily so, but irrespective of it, the gift will be construed as demonstrative, instead of a specific legacy,"

and then he quotes from *Walls v. Stewart,* 16 Pa. St. 281, certain language of Judge Bell in that case to the same effect. The opinion in *Walls v. Stewart* contains other statements of the principle. Thus the Court says:

"I think an examination of the authorities English and American will show that wherever an intent is exhibited to make distribution of the value of lands, either by means of a sale and division of proceeds or by the charge of a sum in monies payable by the devisee of the land as a quasi partial purchase of the estate devised, the bequests are always treated as specific, and consequently liable to be adeemed by an alienation of the land in the life time of the testator,"

and:

"In this as in other questions springing from the construction of wills, the intention of the testator is principally to be ascertained."

In *Re Stilphen,* 100 Me. 146, the Supreme Court of Maine says:

"The distinction between a specific and a demonstrative legacy involves not merely a technical question, depending for its solution solely upon the precise language of the bequest, but a substantial inquiry respecting the intention of the testator as shown by the terms of the particular legacy, examined in connection with all of the other provisions of the will."

And again:

"It is important to observe that two elements are necessary to constitute a demonstrative legacy. It must appear in the first place that the testator intended to make an unconditional gift in the nature of a general legacy, and, secondly, the bequest must indicate the fund out of which it is payable."

In *Stoever's Estate,* 45 Pa. Super. Ct. Rep. 451, the
Presiding Judge of the Orphans' Court of Lebanon
county had said in deciding certain legacies specific:

"Bearing in mind the somewhat shadowy distinc-
tion of the cases, that courts incline against constru-
ing legacies as specific, and that the intention of the
testator should be clear to make a legacy specific, we
must, however, not lose sight of the fact that the pri-
mary purpose of all rules of construction and inter-
pretation is to arrive at the intention of the testator."

In affirming the decree the Supreme Court of Penn-
sylvania said:

"It is clear enough   *   *   *   that where the lan-
guage of a testator   *   *   *   fairly exhibits his in-
tention that certain legacies should be classed as spe-
cific rather than general or demonstrative, the courts
will readily declare and effectuate such intent."

A Judge of the Circuit Court in Ohio (*Sharp v.
McPherson,* 3 Ohio Dec. 468) said that:

"While the determination of the question" (*which
was whether a legacy very similar to the one at bar
was demonstrative or specific*) "is governed somewhat
by the rules of law applicable thereto, yet it depends
principally upon the intent of the testator. What did
he intend? Did he intend to give the specific thing
or to limit the gift to the particular subject matter?
Or did he intend to give an amount of money in any
event and refer to the fund merely as a convenient
means of payment?"

We are of the opinion that in this case the question
for us to answer is exactly the same. What did the
testator intend to give? Did she intend to give the
proceeds of the Lima property, if she died possessed
of it, up to a certain amount, "so far as those proceeds
would go" and "in the order indicated," or did she
intend to give the sums of money "in any event and
refer to the fund merely as a convenient means of pay-
ment"?

If the "language of the testator fairly exhibits her
intention that the legacies should be classed as specific

rather than demonstrative," we must "declare and effectuate said intent."

We think that the language used in the will and codicil in this case does fairly exhibit this intention.

The only gift of the legacies involved is found in the direction to pay them out of the land devised. The testator, making other pecuniary legacies, made them in a separate paragraph without limitation. If she had desired these legacies in question paid in any event, there is no particular reason revealed by the language of the will for making them "demonstrative" rather than like the others, "general."

Moreover, the language the testator used in the paragraph (3) of her will in which she provides for these legacies is entirely inconsistent with the idea that if the Lima property was for any reason unavailable or even insufficient to pay them, they should be paid out of the general estate as they would be if they were "demonstrative" instead of "specific." She must have known herself to be solvent and believed that her estate would be, and yet she directed that the legacies should be paid only so far as the proceeds of the Lima property "would go" in a certain order indicated. And when, the day after the will was drawn, she changed her mind as to who should hold the trust of her real estate, she emphatically repeats what we think was the expressed intention in the will—to make the proceeds of the sale of the Lima property the only fund from which these legacies were to be paid. For she leaves all her real estate and all her stocks to her trustee. She gives her trustee power to sell it all, and then directs that the proceeds shall be distributed among her brother and sisters, "the proceeds realized from the sale of the Lima, Ohio, property, however, to be subject to the  *  *  *  bequests provided in and by" her will.

It seems plain to us that the use of this language shows that the proceeds of all the property named ex-

cept those of the Lima property were *not* to be subject to the bequests in question.

We have omitted the word "specific" from the above quotation from the codicil because we wished to imply that we did not consider that the force of the argument was much heightened by it. It may have been used, as appellants argue, without reference to its technical meaning as applied to bequests. But it is certain that the use of it does not detract from the probability of the correctness of the conclusion at which we have arrived.

To our minds, quite as plausible an argument advanced by the appellants in behalf of their contention as that the legacies were demonstrative is that they should be considered as a specific charge transferred from the Lima property to the *proceeds* of the Lima property in the hands of the testator after she sold that property, and that so far as those proceeds came into the hands of the executor they were affected by the same charge.

But this argument, even if plausible, is not sound. Apart from the question which is raised by the appellees, of the proof of identity of the proceeds with the cash inventoried in the estate, and assuming that identity, we must hold the legacies adeemed from the moment that Mrs. Tucker conveyed the property itself from which they were to be paid. The intention expressed by the terms of the will affects this situation also. The intent to be gathered from the terms of the will, if it was an intent to make the Lima property in her post mortem estate the fund from which the legacies were to be paid, was an intent also to relieve the general estate from the payment of them. The money into which the land was turned before her death became a part of Mrs. Tucker's general estate.

There is no question of a revocation of the will, or even of the "revocation of a devise"—a term which it may be noted the Court in *Sharp v. McPherson,*

*supra,* with a want of precision uses. It is still all a question of the construction of the will under the guidance of the "pole star" of intent. While, as counsel say, wills cannot be "revoked" by sales by the testator, legacies can be and often are "adeemed," that is, taken away, because there is nothing left in the estate for them to operate on. That was, in our opinion, done in the matter under consideration.

We do not think this is a case where the court should have used a possible discretion to allow counsel fees to the persons differing in opinion from the executor as to the construction of the will and litigating adversely to him to compel his compliance with their demands.

The decree of the Superior Court is affirmed.

*Affirmed.*