**Eva Lenzen et al., Appellees, v. Joseph N. Miller et al., Appellants.**

**Gen. No. 9,584.**

618

Opinion filed April 12, 1941.

CLARENCE W. DIVER, of Waukegan, WILLIAM M. CAR-
ROLL, of Woodstock, and CASSELS, POTTER & BENTLEY,

of Chicago, for appellants; GEORGE C. BUNGE, of Chicago, of counsel.

JOHN V. MOORADIAN and JOSEPH N. SIKES, both of Waukegan, for appellees.

MR. JUSTICE DOVE delivered the opinion of the court.

The principal issue in this case is whether a legacy to be paid from a real estate mortgage which the testator contemplated taking, but which never came into existence, is a charge or lien upon such real estate, or whether the legacy was adeemed because the mortgage never existed. This appeal is from a decree of the circuit court of Lake county holding the legacy is a charge and first lien upon the real estate, with a subordinate lien on account of a judgment against appellees for attorney's fees in a prior preceding to quiet title to the real estate, and ordering a sale of the real estate for satisfaction of the respective liens, with interest thereon, in the order of their preference.

Peter Miller owned a farm of 206 acres in Lake county. He died testate on August 17, 1924. His will was executed on March 2, 1921, naming Joseph N. Miller as executor. It was admitted to probate by the county court of McHenry county. The inventory listed the farm and personal property of the value of $5,674.83. The estate still remains open and unsettled. That part of the will in controversy reads: "Second, After the payment of such funeral expenses and debts, I give, devise and bequeath to my niece Mrs. Eva Lenzen of Grays Lake, Ill.: Two Thousand Dollars ($2,000), said ($2,000.00) not to be paid until such time that my Executor hereinafter named realizes the amount of the Mortgage of my farm which matures March 1st, 1927, as I wish this ($2,000.00) to be paid to the aforesaid Eva Lenzen out of this Mortgage. To my daughter-in-law Lucy Wegener of McHenry, Illinois, I devise and bequeath the sum of Five Dollars

($5.00). The remainder of my entire Estate of every name, nature, and description, I devise and bequeath to my daughter Margaret Stilling, and my son Joseph N. Miller, said remainder to be divided by them in equal shares." Eva Lenzen is in fact a granddaughter of the decedent. She and the son and daughter named in the will are the testator's only heirs at law.

In 1913, prior to the execution of the will, the testator entered into a written agreement to sell the farm to Murray D. Akin for $13,360, payable in certain instalments up to March 1, 1922, at which time Akin was to execute a mortgage back for the unpaid balance of $7,000. This is the contemplated mortgage mentioned in the will. Akin had the contract recorded, and mortgaged the property to other parties. He defaulted in his instalment payments under the contract and the mortgage to Miller was never made. In August 1922, Miller instituted a suit to cancel the contract and the mortgages made by Akin, and to remove them as a cloud on his title. Subsequently, while that suit was pending, he recovered judgment for possession in April 1924, in a forcible detainer proceeding. After his death Joseph N. Miller and Margaret Stilling were substituted as complainants in the suit to quiet title, which culminated in a decree in their favor in 1931, and was affirmed in *Miller v. Akin*, 350 Ill. 186. A writ of restitution in the forcible detainer suit was issued in January 1925. In January 1935, the attorney who represented the complainants in the suit to quiet title recovered a judgment against them for $1,977.10 for his services.

The decree in the case at bar finds that Peter Miller in and by his will "intended to and did charge the payment in full of the demonstrative legacy of $2,000 . . . against said decedent's interest in and to the real estate hereinbefore described, whatever form said decedent's interest might be in said real estate, as the fund or estate out of which said legacy . . .

should be paid prior to the rights of the residuary devisees and legatees . . . and is a charge and prior first lien'' thereon, with interest from the termination of the suit to quiet title, aggregating $2,743.54. The subordinate lien of the attorney is fixed at $2,494.69, including interest.

Appellants claim the will created a specific legacy which was adeemed because the mortgage mentioned in the will never came into existence; that even if the legacy was demonstrative, its payment cannot be enforced in this proceeding; that appellees are not entitled to interest; that they are barred by laches; and that the lien of the judgment for attorney's fees in the suit to quiet title is paramount to all other liens.

Legacies may be classified into specific, demonstrative and general. The distinction between specific and general legacies is, that the former single out the particular thing which the testator intends the donee to have, no regard being had to its value, while the latter are payable out of the general assets, the chief element of the gift being its value. Demonstrative legacies differ from general, and such legacies partake of the nature of specific legacies, in that they are not liable to abate with general legacies upon a deficiency of assets, yet they differ from specific and partake of the quality of general legacies in so far as, if the fund fail, the legatees will be entitled to receive the legacy out of the general assets. (*Baker v. Baker,* 319 Ill. 320.) Demonstrative legacies are bequests of sums of money which are not in themselves specific, but are made payable out of a particular fund, belonging to the testator. The doctrine of ademption does not apply to demonstrative legacies, inasmuch as they are payable out of general assets, if the fund out of which they are payable fails. (*Tanton v. Keller,* 167 Ill. 129; 3 Pomeroy's Eq. Jur., sec. 1133; 2 Williams on Executors, 632.)

The well-established rule is, that a gift of a specified sum of money with reference to a certain fund is either specific or demonstrative. It is specific, if the fund is designated as the exclusive source out of which the legacy is to be paid; it is demonstrative, if the fund is merely the primary but not the exclusive source for the satisfaction of the legacy. It is clear, that whether this fund should be considered as the exclusive source or not must, by the ordinary rules of construction, depend upon the intent of the testator in designating the fund. Such intent is of primary importance. It is said that a legacy is classified according to the incidents it is designated to possess by the testator, and not that it possesses those incidents because of its classification. This process of reasoning is found in general modern authorities, and is supported by many cases in numerous jurisdictions, collected in the annotations in 6 A. L. R. 1359 and 73 Id. 1250. It is in accord with the general rule in this State that the intention of the testator is the polar star in the construction of a will, and all rules to the contrary must yield, provided the intent does not offend against public policy or some positive rule of law. (*Hartwick v. Heberling,* 364 Ill. 523; *Black v. Jones,* 264 Id. 548.)

The courts have inclined against construing a legacy as specific, where the intent of the testator is not clear, in order to guard against the risk of ademption, and that the legacy may be liable to contribution and abatement if the assets are insufficient to pay the debts and satisfy the general pecuniary legacies. (*Maxim v. Maxim,* 129 Me. 349, 152 Atl. 268, 73 A. L. R. 1244; *Ives v. Canby,* 48 Fed. 718.) This is the rule in a large number of jurisdictions. Among the factors to be considered in determining the testator's intent is whether the legatee is the natural object of the testator's bounty, and the circumstances under which the will was made. (*Dahmer v. Wensler,* 350 Ill. 23.)

The law is well settled that the intention of the testator which courts will carry into effect is that expressed by the language of the will. This language will be interpreted in view of the circumstances surrounding the testator, and evidence will be received to show those circumstances, but it will not be permitted to import into the will an intention different from that expressed by its language, however clearly such different intention may be made to appear. (*Hollenbeck v. Smith,* 231 Ill. 484.)

Where a condition has arisen in regard to a testator's estate which he had not taken into consideration and which he would probably have provided for if he had thought of it when making his will, the court cannot conjecture what provision he would have made unless that condition is contained in the words he has used in making his will. A devise by implication can be given effect only where the implication is so strong as to leave no reasonable doubt of the testator's intention; and furthermore, it must be founded upon some expression in the will. It cannot be inferred from absolute silence (*First Trust & Savings Bank of De Kalb v. Olson,* 353 Ill. 206). The testator's intention must be determined by the language he used in the will, and not from any surmise that he used the language to express an intention or meaning he had in mind but failed to express. If he has overlooked a condition which he would perhaps have provided for if it had occurred to him, the court cannot guess which provision he would probably have made and by construction read it into his will on the presumption that he would naturally have made such a provision if he had thought of it. (*LaRocque v. Martin,* 344 Ill. 522.)

One controlling principle runs through practically all the cases in this State and other jurisdictions. It is that while courts may lean to construing legacies as demonstrative rather than as specific, so that they may

not fail, this leaning and all other presumptions will give way if the intent of the testator to the contrary is fairly exhibited by the words of the will. Whenever it can be inferred that the testator's intention was to give the legatee a specified sum, not necessarily out of a particular fund, although incidentally and primarily so, but irrespective of it, the gift will be construed as demonstrative, instead of a specific legacy. (*Meily v. Knox*, 191 Ill. App. 126; *In re Wilson's Estate*, 260 Pa. 407, 103 Atl. 880; *Georgia Infirmary for Relief and Protection of Aged and Afflicted Negroes v. Jones*, 37 Fed. 750; *Spinney v. Eaton*, 111 Me. 1, 87 Atl. 378.) The cases in which the courts have held a legacy to be demonstrative are where the testator had bequeathed a certain sum of money or annuity in such a manner as to show a clear, separate and independent intention that the money shall be paid the legatee at all events. (*Watrous v. Smith*, 7 Hun. (N. Y.) 544.) Such an intention is not controlled merely by a direction in the will that the money is to be raised in a particular way, or out of a particular fund. (*Kenaday v. Sinnott*, 179 U. S. 606.) Conversely, where it appears the intention of the testator is that the designated debt or fund shall be the only source of payment, it is held the legacy is specific, and consequently subject to ademption by the alienation or destruction of the object. (*Meily v. Knox, supra; In re Stilphen*, 100 Me. 146, 60 Atl. 888; *Walls v. Stewart*, 16 Pa. 275; *In re Wilson's Estate, supra.*)

Appellees argue that the courts have gone a long way in upholding legacies admittedly specific where there has been a change in the form of the fund provided for payment. Among the cases they cite are *Heirs of Wright v. Minshall*, 72 Ill. 584, and *Adams v. Peabody Coal Co.*, 230 Id. 469. In each of those cases a testator devised lands to a certain person. In the *Wright* case he had previously contracted to sell the land to a third

party, and the purchase price was paid after his death. In the *Adams* case the testator gave an option of purchase after he executed his will, and the option was exercised after his death. In each case the court held the devisees were entitled to the money. They took the land devised by the will, which spoke from the date of the testator's death. They took title subject to its terms. There was no change in the form of the gift. The payments, being made after they took title, naturally belonged to them. Appellees also cite *Peoples Bank of Bloomington v. Trogdon,* 276 Ill. App. 373, where there was a legacy of the income from a long term lease with the corpus to vest at a certain age of the beneficiary, either in the form of the leased property or the proceeds of a sale thereof through the exercise by the lessee of an option of purchase. The court held that a cancellation of the lease and a sale of the property, under an order of court, to another than the lessee, subsequent to the death of the testator, did not cause the legacy to lapse. Obviously, those cases have no application here.

*Cornwell v. Mt. Morris M. E. Church,* 73 W. Va. 96, 80 S. E. 148, cited by appellees, involved legacies out of a fund described as "coal money" which was later invested by the testator in bonds. The money was derived from the sale of coal, and was on deposit in a bank, but not designated as coal money. The bonds purchased were left with the bank. The court held the fund had not ceased to exist, nor in any way been destroyed or lost, but remained in an altered form. *In re Black's Estate,* 223 Pa. 382, 72 Atl. 631, also cited by appellees, the testator directed his executor to pay one-half the proceeds of certain bonds to a named legatee. Prior to his death the bonds were paid and invested in a mortgage. The court held the testator bequeathed, not the bonds, but the proceeds, and that such proceeds were identified and earmarked, and were the very thing bequeathed. In each of those

cases the very fund out of which the legacy was to be paid was still in existence, and they are not persuasive here.

It may be stated as a general rule, well supported by a majority of the authorities (65 A. L. R. 632) that a change from absolute ownership of real property to a mortgage interest by way of security, or from a mortgage interest to the absolute ownership of the mortgaged property, revokes or adeems a devise or legacy of the interest given by a will. The cases cited by the annotation cover decisions in at least fourteen jurisdictions. Conformably to this rule it was recently held (*In re Estate of Keller,* 225 Iowa 1349) that a mere change in the form of the subject of a bequest will not work an ademption, but a change from ownership of a mortgage to that of the real estate upon which it was secured is not a mere change of form, but is a change of substance, and works an ademption. The opinion applies the same rules as to the testator's intention hereinabove set out, and adopts the doctrine laid down in the leading English case of *Ashburner v. MacGuire,* 2 Bro. Ch. 110, 29 Eng. Reprint, 63, and by Mr. Justice CARDOZO (*In re Brann,* 219 N. Y. 263, 114 N. E. 404) to the effect that if a specific legacy loses its identity, or is changed in substance, or is destroyed, the result is an ademption. While the legacy in the case at bar was not a gift of the mortgage itself, it was a gift of a specific sum out of a specific mortgage. The same principle as to preserving identity that was applied in the Iowa case is applicable here. The legacy in controversy does not involve a change in form, but a total failure of the fund to ever come into existence, which is analogous to a situation where the fund is destroyed.

In order to qualify as a demonstrative legacy it must appear that in the event the primary fund failed or was destroyed, the legacy would be a charge on the general assets of the estate. The claim of appellees

and the holding of the trial court that it was a charge and lien upon the particular real estate do not meet the definition of a demonstrative legacy.

The testator in the case at bar expressly provided that the legacy to Eva Lenzen was not to be paid until his executor realized the amount from a contemplated mortgage, as he wished the $2,000 to be paid out of the mortgage. He made no provision for its being paid otherwise or from any other source, and there is nothing in the language of the will from which it can reasonably be inferred that he intended she should be paid from any source other than from the mortgage, or that he intended to charge the real estate with such payment.

If he had such an intention he did not express it in his will, and the courts have no authority to speculate upon or read such an intention into the instrument. Under the well-settled law applied to the facts in this case, the legacy was specific and inasmuch as the only source from which the testator manifested an intention it was to be paid, never came into existence, it was for that reason adeemed. It is therefore unnecessary to consider the other grounds urged for reversal. The decree of the circuit court is reversed.

*Decree reversed.*