# JUNE TERM, 1919.*

*In re* MANSHAEM'S ESTATE.

MANSHAEM *v.* NICHOLS.

1. WILLS—CONSTRUCTION—INTENTION OF TESTATOR.

The first and most important rule to be observed in construing wills is to ascertain the intention of the testator and to give effect to that intention if it be legally possible.

2. SAME—INTENT OF WILL AS A WHOLE.

The intention must be gathered from the whole will, and where possible, effect must be given to all of its provisions.

3. SAME—CONSTRUCTION.

While the will speaks from the death of the testator and not from its date, construction may often be aided by a consideration of the facts and circumstances existing at the date of the will.

4. SAME—ADEMPTION—REVOCATION—CHANGE OF PROPERTY—RULE.

The rule as to ademption or the presumption of revocation through a change during the lifetime of the testator in the nature of the property devised or bequeathed does not apply where the proceeds of a certain property, and not the property itself, is the subject of the gift.

5. SAME—PERSONAL PROPERTY—EFFECT OF SALE OF REALTY DURING TESTATOR'S LIFETIME—INTENTION.

Where testator in his will, after making certain specific bequests, and providing for certain expenses, gave to his two daughters the remaining personal property, and providing that, if it should not amount to $800, the two sons were to make up the deficiency, and stating that this provision, together with such gifts as he had already made them, should constitute their entire share in his estate, *held,* to negative the intention of testator that the daughters should share in the proceeds of the farm which

For authorities passing on the question of law governing construction of will, see note in 2 L. R. A. (N. S.) 443.

*Continued from Vol. 206.

the will directed should be sold and the proceeds divided equally between the two sons, but which was sold during his lifetime and the proceeds kept intact until his death.

6. SAME—BEQUEST OF PROCEEDS OF REALTY—SALE OF REALTY BY TESTATOR—EFFECT.

Where testator's will directed that the farm should be sold to the highest bidder, and provided that after the sale was consummated the entire rest and residue of the estate should go to the two sons in equal shares, the sale of the farm in testator's lifetime would not affect the rights of the sons under the will even if the sale was made with the avowed purpose of disinheriting them.

Error to Kent; Brown, J. Submitted June 13, 1919. (Docket No. 46.)   Decided July 17, 1919.

Daniel F. Manshaem filed a petition for a construction of the last will of John Manshaem, deceased. There was a construction of said will in favor of petitioner, and Florence Nichols and another, contestants, appealed to the circuit court. Judgment for contestants. Petitioner brings error. Reversed.

*Jewell & Smith,* for appellant.

*Charles E. Ward,* for appellees.

On September 6, 1910, John Manshaem made and published his last will and testament in the following language:

"*First.* I direct payment of my just debts, funeral expenses, including the placing of a proper marker over my grave and the expense of administering my estate. I desire to be decently and respectably buried, but not expensively.

"*Second.* I give and bequeath unto my son, Evril J. Manshaem, my gold watch and chain and my bedstead, my mattress and feather bed and two feather pillows and the other bed clothes pertaining thereto.

"*Third.* I give and bequeath unto my daughter, Florence Nichols, two-thirds (2/3) of whatever personal property I shall die possessed of, and unto my

daughter, Della J. Dennis, the remaining one-third (1/3) of said personal property, to them and their respective heirs forever.

"Should my personal property, after the payment of debts, funeral expenses and administration charges, not equal eight hundred dollars ($800.00), then my two sons hereinafter named, shall in equal shares furnish enough moneys to produce the deficiency up to that sum, and in such event my said daughter Florence, shall have and receive five hundred dollars ($500.00) of said eight hundred dollars ($800.00), and my daughter Della three hundred dollars ($300.-00). The provisions made in this paragraph for my said daughters, together with such gifts as I have made them in the past, shall constitute their entire shares in my estate.

"*Fourth.* I hereby appoint Benjamin C. Porter, cashier of the South Grand Rapids State Bank, as executor hereof, and I hereby direct my executor, or his successors in office, or the person appointed to act in his stead, should he fail to qualify, to sell my farm in Wyoming township at public auction, after giving reasonable notice of such sale, the sale to be made to the highest bidder therefor, and convert the same into cash. After said sale has been consummated, I give, devise and bequeath unto my two sons, Daniel F. and Evril J. Manshaem, the entire rest and residue of my estate, the same to be had by them in equal shares, to have and to hold to them and their respective heirs forever.

"*Fifth.* Should my daughter-in-law, the wife of my said son, Daniel F. Manshaem, claim, or pretend to have any claim against my estate, and should she present the same for allowance, and should any sum be awarded her thereon, I direct that the same shall be paid to her out of the portion of my estate herein given to her husband.

"*Sixth.* I hereby revoke any and all wills and testamentary writings by me at any time heretofore made."

At that time he was 80 years of age. About three years later he was adjudged mentally incompetent; a guardian was appointed and on March 12, 1914, he was adjudged insane and admitted to the State hos-

pital at Kalamazoo where he died in August, 1915. He had been a widower for upwards of 20 years prior to his death and had made his home for the most part during that time with his son Daniel. His sole heirs at law consisted of his four children named in the will, none of whom contested the proceedings for guardianship nor the proceedings for the probate of the will which was duly admitted to probate in the probate court for Kent county. Following said probate and on July 1, 1916, Daniel F. Manshaem filed a petition for the construction of said will in the probate court. After argument the probate judge made the following finding as to the proper construction of the will:

"1st. The farm in Wyoming township sold for $6,-000.00 and I determine that to be its value. This amount should be equally divided between the two sons, Daniel F. and Evril J. Manshaem, less their *pro rata* share of the administration expenses, and the expenses on the hearing of this petition hereafter to be determined.

"2d. The balance of the property of every kind and nature except the property mentioned in paragraph 'two' of deceased's will, is divided as follows: Two-thirds to Florence Nichols and one-third to Della J. Dennis, less their *pro rata* share of the expenses of administration and the expense on the hearing of this petition hereafter to be taxed."

—and later made an order for distribution based upon such finding. From this order Della J. Dennis and Florence Nichols, the two daughters of the deceased, filed a claim of appeal to the circuit court. Something more than a year after the making of the will and on December 6, 1911, the testator conveyed to his son, Daniel F. Manshaem, the farm mentioned in the will for an express consideration of $6,000. Said deed contained the following reservation:

"Said first party reserving to himself the right to use and occupy the downstairs front room in dwelling

house now located on said described premises during his lifetime, said room to be properly cared for by said second party, and kept in a neat and sanitary condition; said second party is also to do necessary laundry work for said first party or hire the same done at his own expense."

The money received from said sale passed into the hands of the guardian of testator and was in turn by him paid over to the executor of the estate after the death of the testator and now remains intact and ready for distribution under the will. The learned circuit judge who heard the case on appeal reversed the order of the probate court and made the following finding:

"In this proceeding Daniel F. Manshaem filed a petition in the probate court for the county of Kent, in which petition he prayed, in substance, that the will of John Manshaem, deceased, be construed to mean that the farm he then owned should be sold and the proceeds divided equally between Daniel F. Manshaem and Evril J. Manshaem (subject to the possible payment by them to Della J. Dennis and Florence Nichols of enough to bring their portion up to eight hundred dollars), without regard to the question whether he in his lifetime sell the farm, the proceeds thereof in his hands should not become personal property to be distributed as such under his will, but should be divided as above stated.

"Said petition also prayed, in substance, that said will be construed to mean that Della J. Dennis and Florence Nichols should have only the personal property John Manshaem then had, together with such personal property as he might thereafter acquire from any source except from the sale of said farm; the said Della J. Dennis and Florence Nichols, however, to have a minimum of eight hundred dollars, in case the personal property he then had, together with such addition thereto, if any, should not amount to eight hundred dollars at the time of his death.

"A hearing was had upon this petition in the probate court for the county of Kent before the Honorable Lewis L. Thompson, acting probate judge, who

made an order of distribution, granting the prayer of said petition and distributing said estate accordingly. Della J. Dennis and Florence Nichols appealed to this court from said order, and said cause came on to be heard before the court without a jury, whereupon the parties produced witnesses who were sworn in open court, and the case was then argued by counsel for the respective parties, after which the court had due deliberation thereon.

"There is no substantial difference between the counsel of the respective parties as to the law applicable to this case, both stating in substance that in order that the court sustain the finding and construction of the probate court, it must find from the language of the will itself that it was the intention of the testator that the devise or bequest to Daniel F. and Evril J. Manshaem should stand, notwithstanding any change in the form of the property during the lifetime of testator.

"The court is unable to find such an intention expressed in the will in question. On the contrary, the language:

"'I give and bequeath unto my daughter Florence Nichols two-thirds of whatever personal property I may die possessed of, and to my daughter Della J. Dennis the remaining one-third of said personal property, to them and their respective heirs forever,'

—is plain and unequivocal, and it is not inconsistent with any other provision of the will.

"The construction contended for by Daniel F. Manshaem cannot be sustained without disregarding the language above quoted. No force or effect could be given the words 'whatever personal property I shall die possessed of,' if the contention of petitioner is sustained.

"It is the common understanding of laymen, as well as lawyers, that the making of a will disposing of a certain piece of property does not deprive the testator, during his lifetime, of the right and ability to himself dispose of that property, or to so change its form that the proceeds will pass under his will to persons other than those who would have received it had it remained intact until the death of the testator.

"The court finds that this was the opinion and understanding of John Manshaem at and after the time of making the will in question.

"The court finds that at and after the time of the execution of the deed of the farm in question on the 6th day of December, 1911, the said John Manshaem intended to so change the form of his property that the proceeds of said farm should become personal property.

"The court further finds that at and after the time of the making of said deed, the said John Manshaem intended that the proceeds of the sale of said farm to Daniel F. Manshaem should not be divided between Daniel F. Manshaem and Evril J. Manshaem under the fourth clause of his will or otherwise.

"The court further finds that the said John Manshaem had reason to and did undergo a change of feelings toward the said Daniel F. Manshaem after the making of said will, and that at and after the time of deeding said farm to the said Daniel F. Manshaem, the said John Manshaem felt and believed that his son Daniel F. Manshaem was not kind and considerate toward him; that the wife of said Daniel F. Manshaem was not kind and considerate toward him; that at and after the time of making said deed, the said John Manshaem felt and believed that in deeding said farm to said Daniel F. Manshaem for the consideration of six thousand dollars he was actually making a gift to the said Daniel F. Manshaem by reason of the fact that the said farm was worth a substantial sum in excess of six thousand dollars; that the said Daniel F. Manshaem had used and appropriated to his own use farm tools and other personal property considered by John Manshaem to be of considerable value, belonging to the said John Manshaem and that much ill feeling arose and contention had between John Manshaem and Daniel F. Manshaem over said tools; that the said Daniel F. Manshaem had received all he ought to receive in view of the circumstances. The said John Manshaem also felt and believed that, after he had deeded said farm to said Daniel F. Manshaem reserving a room in the house on said farm and the right to certain care and attention therein, the said Daniel F. Manshaem and the wife of said Daniel

F. Manshaem treated him with indifference and unkindness, and said John Manshaem stated in substance to various people that Daniel F. Manshaem had received all that he would ever get from him; that he had received all he was entitled to, and that he knew and understood what had been done by him and the effect thereof, and, in substance that the proceeds of said farm would not be divided between the said Daniel F. Manshaem and Evril J. Manshaem but would go to his daughters.

"The court finds that said farm was worth a substantial sum over and above six thousand dollars at the time it was deeded to petitioner; that petitioner did have and use some of the tools and other property of the said John Manshaem, and that the said John Manshaem had some reason to feel he was not treated with the kindness due him, especially after deeding his farm to petitioner.

"The court finds that the language in the fourth paragraph in said will does not show an intention on the part of the testator that the proceeds of the farm in question, if sold by testator in his lifetime and converted into money or other personal property, should be divided between Daniel F. Manshaem and Evril J. Manshaem; and the court is of the opinion that the testator, in providing that the executor should sell said farm and then divide the proceeds between Daniel F. and Evril J. Manshaem, intended thereby only to provide against probable trouble and ill feeling between his two sons if they became owners in common of said farm directly under the will, and the testator did not intend or understand that by the provisions of said fourth paragraph, or by any other provision in said will, he had deprived himself of the right to dispose of said farm in his lifetime, and to handle and dispose of the proceeds as he saw fit, either during his lifetime or at his death, by and under the third paragraph of his said will.

"It follows that the construction placed upon said will by the probate court of Kent county was, under the terms of said will and under the evidence in the case, erroneous.

"The order of the probate court for the county of Kent, made on the 18th day of August, 1916, constru-

ing said will and distributing said estate, will therefore be set aside and reversed. That all the personal property belonging to said estate, including the proceeds of the sale of said farm, except that mentioned in the second paragraph of said will already distributed, will be divided between Florence Nichols and Della J. Dennis, according to the third paragraph of said will; that is to say, two-thirds thereof to Florence Nichols, and one-third thereof to Della J. Dennis, subject to the payment of the necessary expenses of administration in proportion to the share provided for each in said third paragraph.

"The probate court for the county of Kent will be directed to enter the necessary orders and take the necessary steps to settle and distribute said estate in compliance with this opinion and construction.

"Della J. Dennis and Florence Nichols will recover their costs in this proceeding against Daniel F. Manshaem, including an attorney fee of twenty-five dollars.

"Execution therefor will be allowed."

Daniel F. Manshaem now reviews the case in this court under some 33 assignments of error.

BROOKE, J. (*after stating the facts*). The question involved is whether under a proper construction of paragraphs three and four of the will, the sale of testator's farm during his lifetime worked an ademption or revocation *pro tanto* so that the proceeds of the farm should pass to the daughters under paragraph three instead of to the sons under paragraph four. We have repeatedly held that the first and most important rule to be observed in construing wills is to ascertain the intention of the testator and to give effect to that intention if it be legally possible. *Stender* v. *Stender*, 181 Mich. 648; *In re Ives' Estate*, 182 Mich. 699; *In re Shumway's Estate*, 194 Mich. 245 (L. R. A. 1918A, 578); *Kirsher* v. *Todd*, 195 Mich. 297; *In re Blodgett's Estate*, 197 Mich. 455. That intention must be gathered from the whole will, and, where possible, effect must be given to all of the provisions

of the instrument. While the will speaks from the death of the testator and not from its date, construction may often be aided by a consideration of the facts and circumstances existing at the date of the will. At the time the will was made it is obvious that the testator was possessed of personal property not exceeding in value the sum of $800. The provisions of paragraph three indicate that the testator believed that that class of property at the time of his death might be less than that amount, he, therefore, provided that the two sons named in paragraph four should, if necessary, contribute in equal shares a sum sufficient to make up such possible deficiency. After this provision and as a part of paragraph three he used this significant language:

"The provisions made in this paragraph for my said daughters, together with such gifts as I have made them in the past, shall constitute their entire shares in my estate."

In the fourth paragraph he names his executor and provides for a sale by the executor of his farm, adding:

"After said sale has been consummated, I give, devise, and bequeath unto my two sons, Daniel F. and Evril J. Manshaem, the entire rest and residue of my estate, the same to be had by them in equal shares, to have and to hold to them and their respective heirs forever."

After reading these two paragraphs it is impossible to doubt that it was the testator's intention most clearly expressed to give to his two daughters the personal property remaining after certain specific bequests, testator's funeral expenses, administrator's expenses and burial expenses had been paid. This balance from his knowledge of the estate he presumed might not amount to $800 and therefore he provided that his two sons should make up such possible deficiency. He further indicated that the farm should be, by his executor, sold and the entire rest and resi-

due of his estate was devised and bequeathed equally to his two sons. The rule as to ademption or the presumption of revocation through a change during the lifetime of the testator in the nature of the property devised or bequeathed does not apply where, as in this case, the proceeds of a certain property and not the property itself is the subject of the gift.

Paragraph four does not constitute a specific devise of the farm to the two sons. Speaking of a similar situation, the court, in the case of *Bills* v. *Putnam,* 64 N. H. 554 (15 Atl. 138), said:

> "They treat this matter as though there was a specific devise of real estate, or as though the last clause of the will was incapable of disposing of anything but real estate. If that were so, there might be some ground for their position. But when we see there is no specific devise of real estate, and that the last clause of the will, instead of being restricted to disposing of real estate, is a sweeping residuary clause, capable of disposing of both personal and real estate, this whole objection is at once disposed of. The conveying of part of the real estate by the testatrix after the making of the will, with such a residuary clause as is in this will, does not indicate any change of intention on her part in regard to the disposition of her will *pro tanto,* because she was perfectly aware that the proceeds of this real estate, being in personal property, could pass equally as well under this residuary clause as the real estate itself."

See, also, upon this point, 2 Alexander on Wills, p. 1089; *Black's Estate,* 223 Pa. 382 (72 Atl. 631); and *Miller's Exr.* v. *Malone,* 109 Ky. 133 (58 S. W. 708, 95 Am. St. Rep. 338).

Testimony introduced at the time of the trial as to fugitive statements made by the testator after the sale of the farm to Daniel to the effect that Daniel would never receive any more of his property, are relied upon by appellees as indicating a change in the testator's intention toward Daniel Manshaem and

that he intended by the sale of the farm to Daniel to change the farm into personalty for the purpose of having it go to his daughters under paragraph three instead of to his sons under paragraph four. We have seen that the sale of the farm by the testator during his lifetime to Daniel does not legally affect the rights of Daniel and his brother under paragraph four of the will. If it appeared beyond peradventure (which is not at all the case), that this sale was made with the avowed purpose of disinheriting Daniel and his brother, the result must be the same.

The judgment is reversed, with costs to appellant.

BIRD, C. J., and OSTRANDER, MOORE, STEERE, FELLOWS, STONE, and KUHN, JJ., concurred.