Let the appeal be dismissed.

---

In the matter of the appeal of WILLIAM H. KIRKPATRICK, executor of the last will and testament of Mary Adelaide Jacoby, deceased, from the decree of the orphans court of the county of Camden, ordering distribution of the estate of Henrietta Cooper, deceased.

[Submitted October 30th, 1922. Determined January 3d, 1923.]

1. Where a testatrix bequeathed to C. and J. all her share and interest in a certain estate, and became insane before receiving such share and interest, and, subsequently, such share and interest was paid to her guardian, who mingled it with other funds of his ward, such payment operates as an ademption of the gift made by the testatrix.

2. A specific bequest is necessarily intended by a testatrix to become effective only in case the thing exists at the testator's death. If it does not then exist, the bequest fails.

3. *Wilmerton* v. *Wilmerton, Executor, 176 Fed. Rep. 896*, overruled. *Hoke* v. *Herman, 21 Pa. St. 301*, approved and followed.

---

On final hearing on appeal from decree of orphans court.

*Mr. Osiris D. McConnell,* for the appellant.

*Mr. William D. Lippincott,* for the respondents.

*94 N. J. Eq.*          In re Kirkpatrick.

LEAMING, VICE-ORDINARY.

This is an appeal from an order of distribution made by the orphans court in settlement of a testator's estate.

No dispute exists touching the facts. The sole inquiry is whether there has been an ademption of a certain gift contained in the seventh paragraph of the will of Henrietta Cooper, decased. That paragraph is as follows:

> "*Seventh*—I give, devise and bequeath all my share and interest in the estate of Ann Nice, deceased, also all my share and interest in the estate of Levi Nice, deceased, including all my interest in lands and real estate which came from the said Ann Nice and Levi Nice, or either of them, to my two sisters Ann N. Cooper and Mary Adelaide Jacoby, share and share alike, to them their heirs and assigns forever."

Subsequent to the execution of her will testatrix became insane and was adjudged a lunatic by the court of chancery of this state. A guardian of testatrix was then appointed in this state and one Adamson was thereafter appointed ancillary committee of her estate in Pennsylvania. Testatrix remained insane until her death.

After testatrix became insane and before her decease the two estates referred to in the paragraph of her will above quoted were settled and the respective distributive shares of those two estates which would have been payable to testatrix was paid to Adamson as her ancillary committee in Pennsylvania.

The present controversy arises from the claim that the payment to Adamson, as committee of testatrix, of the distributive shares due testatrix from the two estates named in the paragraph of the will above quoted was operative as an ademption of the gift made by that paragraph of the will of testatrix. Accordingly it is claimed that the amount so paid falls into the residuary estate of testatrix and is payable to others under the residuary clause of her will.

Treating the money paid to Adamson as ancillary committee of testatrix, as capable of identification at this time, the primary inquiry arises whether the payment to Adamson after testatrix had become insane was operative to adeem the gift made by the clause of the will of testatrix above quoted.

In this state there appears to be no case in which the question of ademption of a specific legacy has been considered where the act which is claimed to be operative as an ademption has occurred after the testator has become insane. Few cases of that nature appear to have arisen elsewhere.

In England two distinct lines of cases of that general nature have arisen. One, where the act which has been claimed to be operative as an ademption of the bequest has been the act of the committee in lunacy of testator in the performance of his administrative duties. In cases of that nature the bequests are declared to be adeemed, even though the proceeds of the conversion are earmarked and intact. The other class of cases is where the conversion of the bequeathed chattel has been the act of strangers or intermeddlers without authority, and the converted proceeds of the bequeathed chattel have been earmarked and preserved. In that class of cases it has been held that the conversion has not effected an ademption.

The cases of the first class are *Freer* v. *Freer, L. R. 22 Ch. Div. 622,* and *Jones* v. *Green, L. R. 5 Eq. Cas. 555.* Those of the latter class are *Basan* v. *Brandon, 8 Sim. 171,* and *Jenkins* v. *Jones, L. R. 2 Eq. Cas. 323.*

In *Freer* v. *Freer, supra,* testator made a specific bequest of stock of a certain railway company. After the date of his will testator was adjudged a lunatic and his committee in lunacy was appointed. The stock being deemed an unsafe investment was subsequently sold in the exercise of the jurisdiction of the lord-chancellor, intrusted with the administration of lunatic's estates. The proceeds of sale were kept intact by being carried to the credit of the lunatic to an account specially designated as the proceeds of that sale. It was determined that the legacy was adeemed and that the proceeds of sale became payable to the residuary legatees. It is there declared by Justice Chitty that the law places the estate of a lunatic in the same position as if there had been no lunacy; that an administrative act touching the lunatic's estate is necessarily given the same force as a similar act performed by testator before his lunacy occurred. It is also there sug-

gested that had an order of sale been made by the lord-chancellor which provided that the proceeds of sale should represent the stock for all purposes, such direction touching the proceeds would not have had any effect in altering the rights of the parties. An exception to that rule is noted in the case of a specific devise of real estate. By the one hundred and nineteenth section of the Lunacy Regulation act it is provided that proceeds of land shall, notwithstanding its conversion, preserve the character of land and belong to the same person who would have been entitled to the land if there had been no conversion.

In *Jones* v. *Green, supra,* testator bequeathed the income of certain shares specifically, and bequeathed the shares to his residuary legatees. Lunacy followed and the shares were sold and the proceeds invested in consols. It was held that the gift of income was adeemed by the sale, and the sum of consols fell into the residue. Says Sir G. M. Gifford, V. C.: "All the authorities show that the conversion must be as a lawful conversion, exactly as if the testator had himself converted the shares into consols. Such an act on his part would clearly have adeemed the gift." The suggestion is there made that an order of sale preserving the proceeds for the specific legatees might have been effective. That suggestion is specifically criticised in the later case of *Freer* v. *Freer,* above reviewed.

In *Basan* v. *Brandon, supra,* one of the other class of English cases above referred to, testator made a specific bequest of money in the hands of his agent. The agent, without authority, invested the money in certain securities. It was held that the gift was not adeemed. In that case no insanity upon the part of testator intervened. In the case of *Jenkins* v. *Jones,* above cited, testator bequeathed farming stock which should be in his possession at his decease. He subsequently became of unsound mind and so remained until his death. After testator became of unsound mind, and before his death, the person named as specific legatee and executor, with the concurrence of the other executor, converted the stock into money, which they deposited in bank in their own and a third

person's names, where it remained until testator's death. This conversion was held not to be operative as an ademption of the gift. It will be observed that in both of these cases the conversion was by persons without authority and in both cases the proceeds of the conversion were preserved as such until testator's death. These two elements were the controlling elements of the decisions.

The English decisions may be said to declare that an ademption occurs where after insanity of testator the thing bequeathed is converted by one with authority to represent testator, irrespective of whether or not the proceeds of sale are preserved as such until testator's death, and that no ademption occurs when the conversion has been by one without authority and the proceeds of the conversion have been set apart and preserved as such at the time of testator's death.

In this country there are two cases in which the subject of ademption has been considered where a conversion of a thing specifically bequeathed has occurred at the hands of a committee in lunacy of testator in the course of the administration of the estate of the lunatic.

The first case is that of *Hoke* v. *Herman, 21 Pa.* (*9 Harris*) *301.* In that case testator bequeathed to his nephew a certain promissory note, with interest, which note testator held against his nephew. Testator subsequently became insane. His committee in lunacy, in settling with testator's nephew for certain services rendered by the nephew to testator after the date of the will, credited on the note as a payment of interest the amount due the nephew for the service. Neither the nephew nor the committee knew that the will gave the note and interest to the nephew. The question presented was whether the amount credited on the note operated as an ademption of the note to that extent, or whether the amount so credited should be paid to the nephew, the estate being ample. Touching ademption, Chief-Justice Black said: "If a thing bequeathed in a will by such a description as to distinguish it from all other things be disposed of, so that it does not remain at the death of the testator, or if it be so changed that it cannot be called the same thing, the bequest is gone. If such a legacy be of a debt, payment

necessarily makes an end of it. The legatee is entitled to the very thing bequeathed, if it be possible for the executor to give it to him; but if not, he cannot have money in place of it. This results from an inflexible rule of law applied to the mere fact that the thing bequeathed does not exist, and it is not founded on any presumed intention of the testator." It was accordingly held that the credit given on the note by the committee operated as an ademption of the note to that extent.

The other case is that of *Wilmerton* v. *Wilmerton, Ex., 176 Fed. Rep. 896.* That case specifically repudiates the conclusions reached in *Hoke* v. *Herman,* last above cited, as well as the case of *Freer* v. *Freer,* above referred to as defining the English rule. In *Wilmerton* v. *Wilmerton,* testator had deposited with a bank certain securities and money under a trust agreement whereby the bank was to collect and receive the principal of the securities at maturity, pay the income thereof to testator, on demand, and reinvest the principal speedily, and upon the death of testator to account for all of the property to testator's estate. Thereafter testator executed his will and subsequently became insane and a conservator of his estate was appointed. Testator's insanity continued until his death. By his will, testator gave to his daughter and son "notes and moneys to the amount of $75,000, as per contract to be managed by said·bank· for the benefit of my estate." This was treated by the court as a specific bequest of the trust funds above referred to. Prior to the death of testator the conservator demanded of and received from the bank the accrued interest on the trust fund, although the money was not needed for the maintenance of the ward or for any other necessary purpose. The judicial inquiry was to ascertain whether that payment to the conservator operated as an ademption of the specific legacy as to the amount so paid. That inquiry was solved in the negative. I think it clear that the views adopted by the learned court afforded a radical departure from all previous adjudications in like circumstances, and have not since received judicial sanction, unless the case of *Morse* v. *Converse (N. H.), 113 Atl. Rep. 214*—a case in which insanity does not appear to have occurred—can be said to have

measurably approved the views expressed in the *Wilmerton Case*. The conclusions reached in *Wilmerton* v. *Wilmerton* appear to be based upon the claim that the conservator had no power to change testator's will. In prior adjudications the primary inquiry uniformly has been touching the power of the conservator to convert the thing which has been specifically bequeathed, and where that power has been found to exist the effect of such conversion upon the will has been deemed to have arisen from the application of the long established rules touching ademption of specific legacies. The opinion of the learned judge proceeds as follows: "Upon sound reason, we think that the English and Pennsylvania cases cited ought not to be followed, and upon what appears to us to be sound reason, we think the rule that legacies are adeemed only where such an intention appears on the part of the testator himself ought to be followed. The question, in our judgment, is not whether, as a mere matter of accident, or of purpose outside of testator's purpose, the thing set apart as the *corpus* of a special bequest has been changed *in specie*. The real question is whether, all things considered, the testator's testamentary disposition did, or did not, remain, with reference to the particular thing embodied in the specific bequest or its proceeds, the same as it was the last moment he was able to exercise a testamentary disposition."

It is difficult to resist a desire to adopt the test of testator's intention as above defined; but is this court privileged to adopt it if in so doing the established principles touching testamentary intent and the inherent nature of specific legacies are to be thereby disregarded? In England, legislation has protected specific devises of real estate from the operation of the accepted rules of ademption; until recognized rules touching ademption are modified in this jurisdiction it appears to be the duty of this court to enforce them as they are found to exist. It seems clear that the test adopted in the *Wilmerton Case* does violence to those accepted rules to a degree that denies this court the privilege of its adoption. Obviously the intention of testator at the last moment he was able to exercise a testamentary disposition cannot be made a uniform

test. Should a testator make a specific bequest of a certain horse and subsequently become insane, the subsequent death of that horse before testator's death would necessarily destroy the bequest. This arises from a quality found inherent in all specific bequests. A will not only takes effect at the death of a testator, but it is intended by a testator to take effect at that time, and testator's intent touching a specific legacy can only be understood as a gift to take effect at that time, and with reference to conditions that may exist at that time, and not as a gift *in presente,* such as an assignment, nor yet as a gift of a certain amount of testator's estate, such as a general legacy. A specific bequest is necessarily intended by a testator to become effective only in case the thing exists at testator's death. The gift of the distributive shares in the two Nice estates, here in question, was intended by testator to become effective should testator die before the shares became payable. The shares became payable before testator's death; had testator remained sane the shares would have been paid to him and an ademption would have resulted. But testator became insane and his lawful representative received the shares for testator that would otherwise have been paid to testator. Accordingly it seems that the only intent of testator that may be here considered must be regarded as an intent to give the shares to the specific legatees should the shares become payable after testator's death. The bequest was in its essential characteristics similar to a gift of a debt due or to become due to a testator. When testator died, and at no time thereafter, was there any debt or other obligation due to testator or to his estate from either of the Nice estates; those obligations had been wholly discharged by payment. The thing on which the bequest operated no longer existed. The necessity of transferring to another a testator's control over his property in the event of his insanity is a contingency always present and a necessity that cannot be escaped. Accordingly the lawful acts of such representative of testator in the performance of his duties in testator's behalf cannot be considered as other than the acts of testator, and as of like effect; in such circumstances it appropriately cannot be

said that the representative of testator has changed testator's testamentary intent.

The principles of ademption as defined in this state appear to accord with the views above expressed. In *Wyckoff* v. *Perrine's Executors, 37 N. J. Eq. 118,* Vice-Chancellor Van Fleet, in discussing whether testator's intent can be properly considered as an element of ademption of a specific legacy, gives approval to the negative view expressed in *Humphreys* v. *Humphreys, 2 Cox Ch. 185,* and the view expressed by Chief-Justice Black in *Hoke* v. *Herman, 21 Pa. St. 301, 305,* above cited, in which it is stated that ademption "results from an inflexible rule of law applied to the mere fact that the thing bequeathed does not exist, and is not founded on any presumed intention of the testator." In *Mecum* v. *Stoughton, 81 N. J. Eq. 319, 324,* it is stated that "the intention to make the legacy specific must include the intention to render the legacy subject to ademption."

Another circumstance also must be considered. When the distributive shares of the two Nice estates were paid to Adamson, as ancillary committee of testatrix, Adamson united the money so received with other moneys of the estate of testatrix which came to his hands and rendered to the court of his appointment an account of his administration as ancillary committee. In his accounts the items received from the two Nice estates appear and are easily identified and aggregate $2,180.79; but all moneys were treated by him and by the court as one general fund and against that general fund was charged all disbursements and allowances without reference to the several sources of the fund. The general balance in his hands was thus determined and approved by the court. This balance was paid by Adamson to Israel Roberts, the ancillary executor of testatrix in Pennsylvania, in accordance with the award of distribution made by the court. Roberts, as ancillary executor of testatrix, then also mixed or commingled the funds received from the ancillary committee with other funds of the estate of testatrix. Roberts then died and the orphans court of Philadelphia county then ascertained the balance remaining in the hands of Roberts, as ancillary

executor of testatrix and by its decree awarded the payment thereof to Central Trust Company of New Jersey, substituted administrator *cum testamento annexo* of testatrix; pursuant to that award the administrator of Roberts thereafter paid the ascertained balance to the Central Trust Company. Roberts was also executor in New Jersey of the estate of testatrix and after his decease the amount of the New Jersey assets remaining in his hands were also paid to the Central Trust Company as substituted administrator *cum testamento annexo* of testatrix. The Central Trust Company also has commingled all funds received by it in one general account. It will thus be observed that up to this time no effort has been made to preserve as a separate fund the two distributive shares here in controversy, and administration expenses, charges and disbursements have been made against a single fund which consisted in part only of the proceeds of those two distributive shares. In these circumstances it seems impossible to identify a part of the money now in the hands of the substituted administrator *cum testamento annexo* of testatrix as the money paid to the ancillary committee of testatrix as the distributive shares of the two Nice estates and treat it as such. Should the lawful acts of Adamson, as committee of testatrix, in receiving those distributive shares be given only the force of acts of a stranger without authority, it yet appears that the legacies must be deemed lost by reason of the existing inability to adequately identify the proceeds of sale.

A decree will be advised affirming the decree of the orphans court.