IN RE MARY L. BARROWS' ESTATE.

May Term, 1931.

Present: POWERS, C. J., SLACK, MOULTON, and THOMPSON, JJ.

Opinion filed October 6, 1931.

*J. H. Macomber* for the appellants.

504

*Max L. Powell* for the appellees.

MOULTON, J. This is an appeal from a decree of distribution made by the probate court for the District of Chittenden under the will of Mary L. Barrows, deceased. The appellants are the testamentary trustees of the residuum of the estate for certain charitable purposes. The appellees are R. G. Malhiot and Mrs. S. M. Malhiot, legatees.

The tenth paragraph of the will, under which the question here arises, is as follows: "I direct my executor to sell, within a reasonable time after my decease, my homestead on North Avenue, in said City of Burlington, and to sell such furniture therein as I have not herein otherwise disposed of, and one-half of the money received therefrom I give and bequeath to R. G. Malhiot and his mother Mrs. S. M. Malhiot, of Bayou Lafourche, Louisiana, and to their respective heirs. The other half of the money received from the sale of said homestead shall be and become a part of my general estate that shall come into the hands of my executor."

After the execution of the will the testatrix was adjudged incompetent and was placed under guardianship as such. At

this time she was possessed of money on deposit in banks, but in the course of time this was exhausted in payment for her necessary care, and the guardian's bank account became overdrawn, and he borrowed a sum of money to pay taxes.

About four years before her death the testatrix was removed to a sanitarium, and thereafter the homestead remained vacant. It was not rentable without substantial repairs, and was deteriorating in condition and depreciating in value. The guardian applied for and received license from the probate court to sell the homestead premises, for the purpose of providing money to pay the bills already incurred and for the future support of the testatrix. Later he sold the homestead and a large part of its contents for the sum of $9,000, which was a reasonable price. In making the sale the guardian acted in good faith and without knowledge of the contents of the will.

At the time of the sale the testatrix owned stocks and securities of the fair value of $24,000, listed on the New York Stock Exchange and readily salable. Before the appointment of the guardian she had executed assignments of these securities to various persons, and had placed the assignments and the various certificates in separate envelopes addressed to the several assignees, and placed the envelopes and contents in her safe deposit box. None of the assignees knew of the assignments, and no claim is made by any of them to the securities. The guardian had access to the safe deposit box and knew of its contents, but did not feel free to sell any of the securities, since he was uncertain as to the title of the testatrix to them.

The guardian expended $2,000 of the sum received from the sale for the necessary support and maintenance of the testatrix. The balance of the money from this source remaining in his hands at the time of her death, and by him transferred to the administrator, c. t. a., was $7,000, represented by a separate savings bank deposit of $3,000 and a purchase money mortgage of $4,000. There are sufficient assets in the estate to pay all the debts, charges, and legacies.

The probate court decreed to each of the appellees one-fourth of the sale price of the homestead and of that portion of the furniture not otherwise disposed of by the will. The trustees have appealed from this decree directly to this Court on the ground that each of the appellees is entitled only to one-fourth of seven-ninths of the sale price, the other two-ninths

having been expended during the lifetime of the testatrix for her necessary support, and the legacy having been adeemed to that extent. The position of the appellees is that, since there was other property not specifically bequeathed, which might have been sold to provide support for the testatrix, the act of the guardian in selling the homestead and furniture did not operate even as a partial ademption of the legacy.

 Both sides agree that this is a specific legacy, and so it is, for it is a bequest of certain part of the specified fund, *i.e.*, the proceeds of the sale of the identified property. *In re Torchiana's Estate*, 292 Pa. 470, 141 Atl. 294, 295; *Galbach* v. *Shively*, 67 Md. 498, 10 Atl. 247, 248; *Meily* v. *Knox*, 191 Ill. App. 126, 137, 138, affirmed 269 Ill. 463, 110 N. E. 56; *Ford* v. *Cottrell*, 141 Tenn. 169, 207 S. W. 734, 736, 737; *In re Martin*, 25 R. I. 1, 54 Atl. 589, 594, 595. The subject of the gift is not the real estate and furniture, but a designated part of the money received from the sale of it. Since it is specific, it may be adeemed. *In re Bradley's Will*, 73 Vt. 253, 257, 50 Atl. 1072; *In re Stilphen*, 100 Me. 146, 60 Atl. 888, 891, 4 Ann. Cas. 158. The intent, on the part of the testatrix, to make it specific, which clearly appears from the nature of the bequest, necessarily includes an intent to render it subject to ademption. *Mecum* v. *Stoughton*, 91 N. J. Eq., 319, 86 Atl. 52, 55.

 A specific legacy is adeemed, and the legatee takes nothing, where the particular property has ceased to exist or has been disposed of by the testator during his lifetime. *Thayer* v. *Paulding*, 200 Mass. 98, 85 N. E. 868, 869; or where it is so changed in substance that it does not remain in specie at the time the will goes into effect. *Ford* v. *Ford*, 23 N. H. 212, 215. But not where the property, although somewhat changed, remains the same in substance. *Havens* v. *Havens*, 1 Sandf. Chan. (N. Y.) 324, 331, 332; *Fidelity, etc., Co.* v. *Young*, 101 Conn. 359, 125 Atl. 871, 873. The ademption may be *pro tanto* only where a part of the property remains intact at the time of the testator's death. *White* v. *Winchester*, 6 Pick. (Mass.) 48, 57; *Richards* v. *Humphreys*, 15 Pick. (Mass.) 133, 137; *Walton* v. *Walton*, 7 Johns Ch. (N. Y.) 258, 265, 11 A. D. 456. Questions of ademption usually arise in connection with some act of the testator with reference to the subject of the bequest, but may do so where there is an involuntary extinguishment of the property. See cases cited, 43 Harv. Law Rev. 1311.

As to whether, in cases not involving a fortuitous destruction of the subject-matter, there must be an intention on the part of the testator in order to work an ademption, the authorities have not been harmonious. In Roman law, an *animus adimendi* was necessary. Just. Dig. Lib. 11, tit. 20, para. 12. But, by the decided weight of modern authority, intention is immaterial. Thus, in *In re Brann,* 219 N. Y. 263, 114 N. E. 404, L. R. A. 1918B, 663, 665, Cardozo, C. J., says: "It was once thought that ademption was dependent on intention, and 'it was therefore held in old days that when a change was effected by public authority, or without the will of the testator, ademption did not follow. But for many years this has ceased to be the law' * * * What courts look to now is the fact of change. That ascertained, they do not trouble themselves about the reason for the change." And Shaw, C. J., in *Richards* v. *Humphreys, supra,* 15 Pick. (Mass.) page 135: "A specific legacy of a chattel, or a particular debt, or parcel of stock, is held to be adeemed, when the testator has collected the debt, or disposed of the chattel or stock, in his lifetime, whatever may have been the intent or motive of the testator in so doing." So, also, in *Elwyn* v. *DeGarmendia,* 148 Md. 109, 128 Atl. 913, 914, 40 A. L. R. 553, it is said that ademption "is to be sought for in the facts of destruction or loss of the thing specified in the legacy or loss of its identity as specified, rather than in change of intention on the testator's part." Lord Chancellor Thurlow, in *Stanley* v. *Potter,* 2 Cox, 180, 182, held that, where the legacy was specific, the only inquiry was whether the thing remained at the testator's death, and, to quote his words, "I do not think that the question (of ademption) in these cases turns on the intention of the testator." To the same effect is *Wyckoff* v. *Perrine,* 37 N. J. Eq., 119, 122. Other cases, which it is not necessary particularly to notice, are in accord. See 43 Harv. Law Rev. 1311; 42 id. 960; 1 Bouvier Law Dict. (Rawle's 3rd revision) tit. "Ademption" pages 134, 135, for further citations.

There are, however, a number of decisions wherein a question of ademption has arisen from the act of a guardian or conservator of the estate of a testator who has been adjudged insane after the execution of the will containing the specific bequest. Since this question has not heretofore been presented in this State, a somewhat extended inquiry into the facts disclosed in these cases, and the reasoning upon which they have

been decided will be helpful in the determination of the present controversy.

It was held in England, that, where the subject of a specific bequest was sold by the committee in lunacy of an insane testator, in the course of his administrative duty as such, the legacy was adeemed, notwithstanding the fact that the proceeds of the sale were earmarked. *In re Freer*, L. R. 22, Ch. Div. 622, 627, 628; *Jones* v. *Green*, L. R. 5 Eq. 555, 559; and see annotation 30 A. L. R. 679 for further citations. These holdings appear to be the logical application of the doctrine stated by Lord Thurlow in *Stanley* v. *Potter, supra.* The rule, however, is now changed by statute, and the acts of committees in lunacy, no longer work ademptions where the proceeds of property specifically bequeathed is not otherwise applied by the committee. 53 and 54 Vict. c. 5 para. 123 (1) ; *In re Walker* (1921), 2 Ch. 63, 65, 66; see annotation 30 A. L. R. 680. Under this statute it has been held that a specific legacy partly used for the support of the lunatic testator was adeemed to that extent. *In re Hodgson's Trusts* (1919) Ch. Div. 189, 196.

In Scotland, while intention is recognized to be immaterial, an ademption does not result from the act of a curator bonis, of an insane testator, unless it is a proper and a necessary act of administration and such as must necessarily and unavoidably have been done by the testator, if *sui juris.* *MacFarlane* v. *MacFarlane* (1910), S. C. 325, 329, 40 Scot. L. R. 266. See annotation 30 A. L. R. 680, 681.

The doctrine of the English cases was adopted in *Hoke* v. *Herman,* 21 Pa. 301, 305, where a debt specifically bequeathed, was partially collected by the testator's committee in lunacy. An ademption *pro tanto* was held to result. The court said: ''The legatee is entitled to the very thing bequeathed, if it be possible for the executor to give it to him; but if not, he cannot have money in the place of it. This results from an inflexible rule of law applied to the mere fact that the thing bequeathed does not exist, and it is not founded on any presumed intention of the testator.''

The same result, based upon the same reasoning, was reached in Matter of Ireland, decided July 15, 1931, by the New York Court of Appeals, 257 N. Y. 155, 177 N. E. 405, 406, reversing a contrary decision by the Appellate Division, 231 App. Div. 288, 247 N. Y. S. 267, 269. There was a specific

bequest of "all my preferred stock in the Ireland Machine & Foundry Company, Inc." After the execution of the will the testator became mentally incompetent and a committee was appointed who, in ignorance of the provisions of the will, sold the above mentioned preferred stock and used a portion of the proceeds for the maintenance and support of the testator. The unexpended balance of the sum received was turned over to the executor after the testator's death. From the opinion of the Appellate Division it appears that there were sufficient assets not specifically bequeathed to pay all legacies and charges. It was held that the bequest of the preferred stock was a specific legacy, and "as the stock was not in existence at the time the will took effect, or the death of the testator, there was an ademption, extinction, or withdrawal of the gift." This case also overrules *In re Carter*, 71 Misc. Rep. 406, 130 N. Y. S. 201, a prior decision of the Surrogate's Court.

On the other hand, the test of intention was approved in *Wilmerton* v. *Wilmerton*, 176 Fed. 896, 900, 100 C. C. A. 366, 28 L. R. A. (N. S.) 405 (cert. den. 217 U. S. 606, 54 L. ed. 900, 30 Sup. Ct. 696). The conservator of the estate of a lunatic testator collected in part the proceeds of a certain fund, which had been made the subject of a specific legacy, and used the amount collected for the support of the lunatic, although there were ample assets of other description available for this purpose. The court refused the reasoning of the English and Pennsylvania cases, and held that the conservator was a custodian merely, with no power to change the testator's intention, since the latter, being lunatic, was, at least so far as a disposing mind was concerned, civilly dead. In holding that there was no ademption, "The question in our judgment," said the court, "is not whether, as a mere matter of accident, or of purpose outside of the testator's purpose, the thing set apart as the *corpus* of a special bequest has been changed in specie. The real question is whether, all things considered, the testator's testamentary disposition did, or did not, remain, with reference to the particular thing embodied in the specific bequest or its proceeds, the same as it was the last moment he was able to exercise a testamentary disposition. In that way, and in that way only, we think, can the right of the man to dispose of his property according to his own wishes, exempt from the interference, caprice, or interest of others, be fully carried out. In that

way only can his intention, as embodied in his will be truly administered."

A somewhat similar question has arisen in Missouri. In *Lamkin* v. *Kaiser* (Mo. App.), 256 S. W. 558, 560, devised property was ordered to be sold by a guardian for the support and maintenance of his ward, the insane testator. The proceeds of the sale amounted to $14,500, and all that remained for distribution in the estate after the death of the ward was $11,931.75. The entire sum was decreed to the devisee, to the exclusion of the residuary legatee. In *National Board* v. *Fry*, 293 Mo. 399, 239 S. W. 519, 523, there was a devise of real estate, with power to the executor to sell and with the proceeds to establish a fund for missionary purposes. After the testatrix's incompetency, her guardian sold the property. The court said: "This property, however, was not sold by Mrs. French (the testatrix). It was not sold by the guardian for her support nor to pay her debts. It was sold for reinvestment, and the purchase money, having been taken over by Mr. Fry, as executor on his final settlement as guardian remains intact in his hand. If the land had been sold to pay debts or for the support of the testatrix, the sale would have operated as a conversion only to the extent and for the purpose for which it was authorized, and any surplus remaining after such object had been effectuated would continue in its original character of realty."

Both of these cases proceed upon the principle that there was no change in the character of the devise by the sale. In each instance the proceeds, so far as they remained intact, were regarded as the real estate itself. *National Board* v. *Fry*, *supra*, is, in some respects similar to the case before us. The executor was empowered to sell the real estate and devote the proceeds to a certain purpose, although the court appears to regard the real estate and not the proceeds of it, as the thing intended to pass under the will. But it is distinctly recognized that if a part of the proceeds had been used for the support of the testatrix, the specific beneficiary would have lost to that extent. How far if at all the necessity for such use would have affected the question is not touched upon. Of course, in *Lamkin* v. *Kaiser*, *supra*, the devisee lost a part of the devise because there was nothing more in the estate which he could have received. In neither case was the question of intention consid-

ered; indeed, in view of the theory upon which the courts proceeded, it is impossible to see how it could have influenced the decision in either instance. In some jurisdictions it is provided by statute that the proceeds of real estate belonging to an incompetent and sold by the committee shall be considered as the land itself. *In re Barnes' Estate,* 162 Mich. 79, 81, 127 N. W. 37; *Snedeker* v. *Ellis,* 136 Misc. Rep. 607, 609, 241 N. Y. S. 563; *Brandreth* v. *Brandreth,* 54 Misc. Rep. 158, 103 N. Y. S. 1074.

*In re Cooper's Estate* (N. J.), is twice reported. In that case the testatrix bequeathed to her two sisters, share and share alike, her distributive shares in the estates of her uncle and aunt. Subsequently she became insane, and was adjudged a lunatic. The two estates were settled and the testatrix's shares therein were paid over to her committee in lunacy, during her lifetime. On appeal from a decree of distribution in the Orphan's Court, the case was heard by the Prerogative Court of New Jersey. In his opinion, reported in 94 N. J. Eq., 380, 119 Atl. 634, the vice ordinary expressly treating the money paid to the committee as capable of identification, after a careful consideration of the authorities, adopted the views expressed in the English and Pennsylvania cases, and held that the legacies were adeemed. *Wilmerton* v. *Wilmerton, supra,* was discussed and quoted from, but the vice ordinary, concluded that the test of intention adopted in that case did violence to the accepted rules governing the inherent nature of a specific bequest to such an extent that it would not be followed. It was said (94 N. J. Eq., 380, 119 Atl. page 637) that a specific bequest is necessarily intended by a testator to become effective only in case the thing exists at his death, since the intention to make the legacy specific must include the intention to make it subject to ademption. Something further was said regarding the effect of commingling the money with other funds of the testatrix, but with this we are not concerned because the record before us discloses no such question.

On appeal taken from the Prerogative Court, to the Court of Errors and Appeals, the decree was reversed. 95 N. J. Eq., 210, 123 Atl. 45, 30 A. L. R. 673. The ground for the decision, so far as is here material, was that the legacy was a gift of distributive shares then due but undetermined in amount, and not presently payable; that a mere payment to the testatrix and

her acceptance of them would produce no change in their identity, nor be any indication of a purpose on her part to cancel the legacy; and therefore, since there would have been no ademption if the testatrix had herself accepted the property, there could be none resulting from the acceptance of it by her committee in lunacy. It was further said, with regard to the commingling of funds by the committee, that a committee in lunacy is a mere conservator of his ward's estate, and the possession of it vests in him no power either intentionally or unintentionally to change the ward's duly expressed purposes respecting the disposition of her estate. The English and Pennsylvania cases cited by the vice ordinary in support of his decision were somewhat summarily dismissed as unsound in principle, and not to be followed.

This decision is criticized in 37 Harv. Law Review, 1141, wherein it is said that the result "savors of judicial legislation," and that the reasoning "is at variance with previous local intimations that the intent of the testator is not controlling." But if the conclusion that an acceptance of the shares by the testatrix herself would not have adeemed the legacies is sound, it necessarily follows that an acceptance by her committee would not have been an ademption. If there was no substantial change in identity, no question of intention on the part of the testatrix arises, where the result of her acceptance is considered. As we have seen, it is not necessary to give attention to the result of a commingling by the committee.

One more decision remains for our notice. In *Morse* v. *Converse,* 80 N. H. 24, 113 Atl. 214, the will made bequests of two named savings bank accounts, with the accrued interest. Upon a voluntary petition by the testatrix a conservator was appointed over her estate. There was no adjudication of insanity. In ignorance of the provisions of the will the conservator withdrew a part of each deposit, purchased a Liberty Bond with the money, and used the balance of the deposits for the necessary support of the testatrix. The legacies were held to be specific, and the change of the deposits to the bond did not operate as a revocation, because the bond was identified as the proceeds of the deposits. There was no suggestion of bad faith on the part of the conservator, or that what he did was not reasonable. Since the testatrix had voluntarily placed him in charge of her property, his acts with reference to it must be

taken to have been done with her authorization. But, as to the portion of the fund consumed, the legacy was held to be adeemed, "both because what was done being reasonable was authorized by the testator and because nothing has come to the executor's hands upon which the will can operate."

This case, of course, differs from those previously considered, in that the conservator was placed in charge by the testatrix, and not by operation of law. But it is significant that one of the two reasons for holding a *pro tanto* ademption was that the fund itself was partially destroyed, and so to that extent was not an asset to respond to the legacies. The case does not specifically disclose whether there were other assets in the estate, yet there must have been, for otherwise the question of ademption would have been purely academic.

■ On the record in the instant case the only issue concerns that part of the fund used by the guardian for the support of the testatrix. The unexpended balance has been kept separate from the other assets, and is intact and identified. Since the proceeds of the property, and not the property itself, was the subject of the bequest, its character was not lost or its substance changed because the sale occurred during the lifetime of the testatrix. Therefore there is no question of an ademption arising from a change in the nature of the property bequeathed. *In re Manshaem's Estate,* 207 Mich. 1, 11, 173 N. W. 483; *In re Black's Estate,* 233 Pa. 382, 72 Atl. 631, 632; *Nooe* v. *Vanney,* 6 Jones Eq. (59 N. C.) 185, 188; *Georgia Infirmary* v. *Jones* (C. C.), 37 Fed. 750, 754; *Littig* v. *Hance,* 81 Md. 416, 432, 32 Atl. 343.

The guardian has acted in good faith. The sale was authorized, and indeed, in view of the unproductive character of the property, its deterioration and the expense involved in its retention, from an economic standpoint this was unquestionably the prudent and proper course to pursue.

■ It is true that there were other assets, not specifically bequeathed, and readily salable. Although the testatrix had executed written assignments of these securities, there had been no delivery of them to the assignees, and hence there had been no transfer of title. *Rice* v. *Bennington County Savings Bank,* 93 Vt. 493, 498, 108 Atl. 708. Furthermore, if there had been no guardianship and the bills for the testatrix's support had remained unpaid at the time of her death, this property the sub-

■

514

ject of the residuary bequest, would have been held to respond to the indebtedness, and, if sufficient for that purpose no abatement of the specific legacies would follow. *Kearns* v. *Kearns*, 77 N. J. Eq. 453, 76 Atl. 1042, 140 A. S. R. 575.

Nevertheless, the fact remains that a portion of the fund composed of the proceeds of the sale was not in the estate at the time the will took effect. The operation of a bequest of personal property is referred to the condition of that property at the death of the testator. *In re Foote*, 22 Pick. (Mass.) 299. The will speaks as of that time. *In re Bugbee's Will*, 92 Vt. 175, 186, 102 Atl. 484; *In re Walbridge's Will*, 102 Vt. 429, 431, 150 Atl. 126. We consider that the rule, supported by the weight of authority, to the effect that no question of intention is material, but that the test is whether the property remains in specie at the time of the death of the testator, ought to be adopted. It follows as a logical consequence that, when a part of the proceeds were expended by the guardian, the legacies were adeemed to that extent. In reaching this conclusion careful consideration has been given to *Wilmerton* v. *Wilmerton*, *supra*, and the other cases following that decision. How far they are necessarily opposed to the views we express, we have endeavored to point out; but to the extent of that opposition we do not follow them.

*Decree reversed, and cause remanded. Let a decree be entered in conformity with the views herein expressed. To be certified to the probate court.*